FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# Feb 25, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BULMARO T.,[1] | No. 1:20-cv-03146-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | ECF Nos. 21, 22 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

1    Before the Court are the parties' cross-motions for summary judgment.  ECF

2   Nos. 21, 22.  The Court, having reviewed the administrative record and the parties'

3   briefing, is fully informed.  For the reasons discussed below, the Court grants

4   Plaintiff's motion, ECF No. 21, and denies Defendant's motion, ECF No. 22.

**JURISDICTION**

6    The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

8    A district court's review of a final decision of the Commissioner of Social

9   Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

10  limited; the Commissioner's decision will be disturbed "only if it is not supported

11  by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

12  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

13  reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

14  (quotation and citation omitted).  Stated differently, substantial evidence equates to

15  "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

16  citation omitted).  In determining whether the standard has been satisfied, a

17  reviewing court must consider the entire record as a whole rather than searching

18  for supporting evidence in isolation.  *Id.*

19    In reviewing a denial of benefits, a district court may not substitute its

20  judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.920(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

ORDER - 3

1  substantial gainful work which exists in the national economy."  42 U.S.C. §

2  423(d)(2)(A).

3      The Commissioner has established a five-step sequential analysis to

4  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

5  404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

6  work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

7  "substantial gainful activity," the Commissioner must find that the claimant is not

8  disabled.  20 C.F.R. § 404.1520(b).

9      If the claimant is not engaged in substantial gainful activity, the analysis

10  proceeds to step two.  At this step, the Commissioner considers the severity of the

11  claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

12  from "any impairment or combination of impairments which significantly limits

13  [his or her] physical or mental ability to do basic work activities," the analysis

14  proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

15  does not satisfy this severity threshold, however, the Commissioner must find that

16  the claimant is not disabled.  *Id.*

17      At step three, the Commissioner compares the claimant's impairment to

18  severe impairments recognized by the Commissioner to be so severe as to preclude

19  a person from engaging in substantial gainful activity.  20 C.F.R. §

20  404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

ORDER - 4

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §

ORDER - 5

404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## PROCEDURAL HISTORY AND THE ALJ'S FINDINGS

On November 19, 2013, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of March 23, 2012.  Tr. 71, 176-80, 546. The application was denied initially and on reconsideration.  Tr. 98-104, 106-10. Plaintiff appeared before an administrative law judge (ALJ) on January 26, 2016. Tr. 42-70.  On February 26, 2016, the ALJ denied Plaintiff's claim.  Tr. 19-41, 608-30.  On April 26, 2017, the Appeals Council denied review.  Tr. 1-8, 631-38. Plaintiff appealed to the district court.  On February 21, 2018, the district court granted the parties' stipulated motion for remand and remanded the matter back to an ALJ for de novo hearing and a new decision, including further evaluation of Plaintiff's English language proficiency and his residual functional capacity.  Tr.

ORDER - 6

647-48.  Plaintiff appeared before an ALJ on June 10, 2020.[3]  Tr. 568-94.  On June 22, 2020, the ALJ denied Plaintiff's claim.  Tr. 540-67.

――――――――――――

[3] On September 21, 2017, Plaintiff also filed an application for Title XVI benefits, and no decision had been made by the field office as of the 2020 hearing.  *See* Tr. 576, 857, 661.  In the 2018 Appeals Council Order vacating the previous ALJ's decision and remanding the Title II claim back to an ALJ to comply with this Court's 2018 remand order, the Appeals Council also ordered the ALJ to "ensure the field office is notified that the case is pending and requires an initial determination" on the 2017 Title XVI claim.  Tr. 661.  Despite receiving this information in 2018, it appears no action was taken by the hearing office or the field office and the local field office had not adjudicated the Title XVI claim by December 2019; a hearing scheduled for December 19, 2019 was adjourned to give the field office more time to expedite Plaintiff's Title XVI claim and, if necessary, consolidate and escalate Plaintiff's Title XVI application to the hearing level.  *See* Tr. 596-07, 601-05, 857.  Subsequently, the ALJ explained that due to COVID-19 office closures DDS and the field office were unable to decide the Title XVI claim; a June 2020 hearing was held on the Title II matter only, and it is the only matter before the Court.  *See* Tr. 546-47, 576-77, 603-05.

ORDER - 7

Initially, the ALJ found that Plaintiff's date last insured was September 30, 2013.[4]  Tr. 549.  At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 23, 2012 through his date last insured.  *Id.*  At step two, the ALJ found that through the date last insured Plaintiff had the following severe impairment: chronic myelogenous leukemia.  Tr. 549.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment through the date last insured.  Tr. 552.  The ALJ then concluded that, through the date last insured, Plaintiff had the RFC to perform light work with the following limitations:

> [H]e could occasionally lift a maximum of 20 pounds, frequently lift/carry 20 pounds; he could stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday; he required avoidance of concentrated exposure to extreme cold or heat.

*Id.*

At step four, the ALJ found Plaintiff was unable to perform any past relevant work through the date last insured.  Tr. 558.  At step five, the ALJ found that, through the date last insured, considering Plaintiff's age, education, work

---

[4] To obtain disability insurance benefits, Plaintiff must demonstrate he was disabled before his last insured date.  42 U.S.C. § 423(c); 20 C.F.R. § 404.1520.

ORDER - 8

experience, ability to communicate in English, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as production assembler, electronics bench worker, and packager.  Tr. 558-59.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of March 23, 2012 through September 30, 2013, the date last insured.  Tr. 560.

Per 20 C.F.R. § 404.984, the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ conducted a proper step-three analysis;

2.  Whether the ALJ properly evaluated the medical opinion evidence;

3.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

4.  Whether the ALJ conducted a proper step-two analysis.

ECF No. 21 at 2.

ORDER - 9

**DISCUSSION**

**A. Step Three**

Plaintiff contends the ALJ erred by not properly assessing Listing 13.06B. ECF No. 21 at 2, 5-9.  At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii). The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 404.1525.  "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed criteria for disability, she will be found to be disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1525(d).  "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory

findings 'at least equal in severity and duration' to the characteristics of a relevant

listed impairment . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting

20 C.F.R. § 404.1526(a)).  "If a claimant suffers from multiple impairments and

none of them individually meets or equals a listed impairment, the collective

symptoms, signs and laboratory findings of all of the claimant's impairments will

be evaluated to determine whether they meet or equal the characteristics of any

relevant listed impairment." *Id.*  However, "[m]edical equivalence must be based

on medical findings," and "[a] generalized assertion of functional problems is not

enough to establish disability at step three." *Id*. at 1100 (quoting 20 C.F.R. §

404.1526(a)).

The claimant bears the burden of establishing his impairment (or

combination of impairments) meets or equals the criteria of a listed impairment.

*Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An adjudicator's

articulation of the reason(s) why the individual is or is not disabled at a later step in

the sequential evaluation process will provide rationale that is sufficient for a

subsequent reviewer or court to determine the basis for the finding about medical

equivalence at step 3."  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at

*4 (effective March 27, 2017).

Listing 13.06B requires chronic myelogenous leukemia (CML), in either 1)

accelerated or blast phase; or 2) in the chronic phase with a) bone marrow or stem

ORDER - 11

cell transplantation or b) progressive disease following initial anticancer therapy. 20 C.F.R. § 404, Subpt. P, App. 1, §13.06B.  Section 13.00 provides instructions to the adjudicator for how to evaluate specific cancers, and the section for leukemia details laboratory and other findings necessary for diagnosis and determination of type and phase of leukemia.  *See* 20 C.F.R. § 404, Subpt. P, App. 1, § 13.002b.

Here, the ALJ found Plaintiff's impairments "did not meet the requirements of listing 13.06(B)" concluding:

the medical records do not demonstrate that he had [1] accelerated or blast phase, nor [2] that he had a bone-marrow or stem-cell transplantation or progressive disease during the period at issue.  Rather [Plaintiff] experienced improvement with treatment, including hydroxyurea and Sprycel.

*Id.* citing Tr. 333, 345.

Plaintiff contends the ALJ erred because 1) he was in the accelerated phase; and/or that the listing is met because 2) Plaintiff has CML in its chronic phase that is progressive following initial anticancer therapy.  ECF No. 21 at 5-8.

1. *13.06B1 Accelerated/blast phase*

Under the Listing, accelerated or blast phase is met if laboratory findings show the proportion of blast (immature) cells in the peripheral blood or bone marrow is ten percent or greater.  Here, as Defendant notes, none of the findings Plaintiff cites to indicate he was ever in "accelerated or blast phase as specified by the Listing."  ECF No. 22 at 16-17 (citing Tr. 321, 324-5, 348, 351) (noting blast cells one percent or lower).  Oncology records from January 11, 2013 confirm

ORDER - 12

there were "no peripheral blasts on his smear" and his oncologist explained bone marrow biopsy was diagnostic of *chronic* phase disease, with "blasts 1% or lower." Tr. 345.  The Court finds Plaintiff has not established his leukemia was in the accelerated or blast phase as defined by Listing 13.06B1 prior to his date last insured.

### 2.  13.06B2b

Listing 13.06B2b requires CML in its chronic phase that is progressive following initial anticancer therapy. 20 C.F.R. § 404, Subpt. P, App. 1, § 13.00B2b.  Records confirm Plaintiff's diagnosis of CML in its chronic phase, as indicated *supra*; and section 13.00I defines "progressive" as "the cancer becomes more extensive after treatment; that is there is evidence your cancer is growing after you have completed at least half of the planned initial anticancer therapy."  20 C.F.R. § 404, Subpt. P, App. 1, § 13.00I6.  As Plaintiff correctly points out, the diagnosis, determination of stage or phase, and treatment of this blood cancer depends on laboratory testing and monitoring response to treatment, including regular blood work to determine cell and other blood counts.  ECF No. 21 at 5-8, *see* 20 C.F.R. § 404, Subpt. P, App. 1, § 13.002b.  Plaintiff argues laboratory findings support progression, not improvement as found by the ALJ.  ECF No. 21 at 5-8.

ORDER - 13

The Court finds the ALJ did not provide analysis or any discussion of laboratory findings in support of his conclusions at step three or elsewhere in the decision, and such analysis is necessary to assess whether Plaintiff's disease improved or progressed during the period at issue.

Review of the medical record through Plaintiff's date last insured shows evidence of laboratory abnormalities including neutropenia, thrombocytopenia, severe anemia, variable transcript levels and failure to achieve major molecular response (MMR). *See, e.g.*, Tr. 553-54; Tr. 329 (possible relapsed CML, "negative for splenomegaly, but he has developed mild leukocytes and thrombocytopenia …"); Tr. 331 (in near MMR but transcript level increasing slightly); Tr. 333 (p210 transcript level down to 0.123% as compared to 26.2% in December but has been severely anemic); Tr. 336 (chronic CML, anemia and thrombocytopenia, with hemoglobin at 8.4 and platelet count at 73,000, initially experiencing drug/treatment related fevers); Tr. 337 (oncologist explained while Plaintiff "insists he feels very well" labs show severe anemia, with "hemoglobin severely low 6.3 … he will be given 2 units of packed red blood cells today"); Tr. 321 (tolerating treatment very well but has not reached major molecular response based on persistent transcript levels over 10% after 11 months treatment).

While Defendant offers an analysis of the medical evidence including laboratory findings, ECF No. 22 at 16-17, the ALJ did not provide such analysis,

ORDER - 14

evaluation, or summary of the relevant medical evidence including laboratory findings at step three or elsewhere in the decision, and thus the Court will not consider the *post hoc* rationalization.  *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

Records during the period at issue show abnormal laboratory findings, including variable transcript levels, which could support Plaintiff's argument of progressive disease.  The ALJ failed to adequately evaluate the relevant evidence or provide sufficient rationale for the Court to determine the basis for step three findings.  On remand, the ALJ is instructed to reconsider whether Plaintiff's impairment(s) meet or equal Listing 13.06B2b, evaluating and interpreting the relevant medical evidence including laboratory findings with the assistance of medical expert testimony, and to set forth an analysis of the listing.

**B.  Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Kiarash Kojouri, M.D. and Jeremy Pietsch, LMHC.  ECF No. 21, 9-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

1  [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

2  *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

3  Generally, a treating physician's opinion carries more weight than an examining

4  physician's, and an examining physician's opinion carries more weight than a

5  reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight

6  to opinions that are explained than to those that are not, and to the opinions of

7  specialists concerning matters relating to their specialty over that of

8  nonspecialists." *Id.* (citations omitted).

9       If a treating or examining physician's opinion is uncontradicted, the ALJ

10  may reject it only by offering "clear and convincing reasons that are supported by

11  substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

12  "However, the ALJ need not accept the opinion of any physician, including a

13  treating physician, if that opinion is brief, conclusory and inadequately supported

14  by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

15  (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

16  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

17  may only reject it by providing specific and legitimate reasons that are supported

18  by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

19  F.3d 821, 830-31 (9th Cir. 1995)).

20

ORDER - 16

1    "Only physicians and certain other qualified specialists are considered

2    '[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir.

3    2014) (alteration in original); *see* 20 C.F.R. § 404.1513 (2013).[5]  However, an ALJ

4    is required to consider evidence from non-acceptable medical sources, such as

5    therapists.  20 C.F.R. § 404.1513(d) (2013).[6]  An ALJ may reject the opinion of a

6    non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*,

7    763 F.3d at 1161.

8       *1.  Dr. Kojouri*

9       On July 19, 2013 and August 6, 2013, Plaintiff's treating oncologist, Dr.

10   Kojouri, completed "Documentation Request for Medical or Disability Condition"

11

12

13

14

---

15   [5] The regulation that defines acceptable medical sources is found at 20 C.F.R. §

16   404.1502 for claims filed after March 27, 2017.  The Court applies the regulation

17   in effect at the time the claim was filed.

18   [6] The regulation that requires an ALJ's consider opinions from non-acceptable

19   medical sources is found at 20 C.F.R. § 404.1502c for claims filed after March 27,

20   2017.  The Court applies the regulation in effect at the time the claim was filed.

ORDER - 17

forms for Washington State DSHS and rendered an opinion on Plaintiff's level of functioning.[7]  Tr. 862-65, 866-69.

On July 19, 2013, Dr. Kojouri completed the DSHS form for the Mt. Vernon, Washington Community Services Office.  Tr. 866-69.  He reported Plaintiff had a physical condition that required special accommodations or considerations, explaining Plaintiff had "chronic disabling weakness and fatigue due to chronic myelogenous leukemia (CML)."  Tr. 866.  He indicated the condition and diagnosis were supported by testing and lab reports.  *Id.*  Dr. Kojouri indicated that Plaintiff's condition limited his ability to work, look for work, or prepare for work, and described any specific limitations as: "unable to lift heavy objects/work long hours."  *Id.*  He indicated Plaintiff was limited to sedentary work, which was defined on the form as "able to lift 10 pounds maximum and frequently lift or carry such articles as files and small tools.  A sedentary job may

---

[7] The record also contains opinions from Dr. Kojouri from after Plaintiff's date last insured, rendered in October 2015, October 2016, March 2017, and January 2020. *See* Tr. 406-07, 538, 539, 1088.  These are significantly past Plaintiff's September 2013 date last insured and some may fall within time periods relevant to Plaintiff's 2017 Title XVI claim, which is not before the Court. *See* Procedural History *supra*).

ORDER - 18

require sitting, walking and standing or brief periods." Tr. 867. Dr. Kojouri indicated Plaintiff's condition impacted his ability to access services, was permanent and likely to limit his ability to work, look for work, or train to work; and that he would be treated with chemotherapy and Dr. Kojouri would provide and monitor Plaintiff's ongoing treatment plan. *Id.*

On August 6, 2013, Dr. Kojouri completed a similar form for the Tacoma, Washington DSHS Community Services Office. Tr. 862-65. He explained Plaintiff had "chronic leukemia, on medical therapy indefinitely. At times, he may experience weakness, fatigue, skin rash, but overall should be able to perform regular work while in remission." Tr. 862. He indicated the condition and diagnosis were supported by testing and lab reports. *Id.* Dr. Kojouri again indicated that Plaintiff's condition limited his ability to work, look for work, or prepare for work, and in the section of the form where he was asked to describe any specific limits in ability to work, Dr. Kojouri wrote Plaintiff should "avoid lifting heavy objects, standing for long periods of time"; and he indicated Plaintiff should be limited to zero hours of work, defined on the form as "inability to participate." *Id.* Dr. Kojouri marked "yes" that Plaintiff had limitations with lifting and carrying, writing in that Plaintiff was "not able to lift more than 20-25 lbs, at this time (per conversations w[ith] p[atient]," and he indicated Plaintiff was limited to light work. Tr. 863. Dr. Kojouri indicated Plaintiff's condition did not

ORDER - 19

1  impact his ability to access services, but that his condition was permanent and

2  likely to limit his ability to work, look for work, or train to work; and that

3  Plaintiff's treatment plan was "dasatinib pill 100 mg every day" provided and

4  monitored by Dr. Kojouri. *Id.*

5      The ALJ gave little weight to Dr. Kojouri's July 2013 opinion, and gave

6  varying weight to different portions of Dr. Kojouri's August 2013 opinion. Tr.

7  555-56. Because Dr. Kojouri's opinions were contradicted by the September 2014

8  nonexamining opinion of Dr. Hoskins, Tr. 90-91, the ALJ was required to provide

9  specific and legitimate reasons for discounting Dr. Kojouri's opinions. *See*

10 *Bayliss*, 427 F.3d at 1216.

11     As this case is being remanded for the ALJ to reconsider the medical

12 evidence due to errors at step three, the ALJ is also instructed to reconsider Dr.

13 Kojouri's medical opinion evidence during the period at issue with the benefit of

14 medical expert testimony.

15     Plaintiff also challenges the ALJ's evaluation of several other medical

16 opinions rendered after Plaintiff's date last insured, including the 2015 opinion of

17 Mr. Pietsch, and Dr. Kojouri's 2015, 2016, 2017, and 2020 opinions. ECF No. 21

18 at 9-16. As the case is being remanded, the ALJ shall reconsider all medical

19 opinion evidence.

20

ORDER - 20

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 21 at 16-20.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim*, 763 F.3d at 1163 (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.  *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The

1    clear and convincing [evidence] standard is the most demanding required in Social

2    Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc.*

3    *Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

4        Factors to be considered in evaluating the intensity, persistence, and limiting

5    effects of a claimant's symptoms include: 1) daily activities; 2) the location,

6    duration, frequency, and intensity of pain or other symptoms; 3) factors that

7    precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

8    side effects of any medication an individual takes or has taken to alleviate pain or

9    other symptoms; 5) treatment, other than medication, an individual receives or has

10    received for relief of pain or other symptoms; 6) any measures other than treatment

11    an individual uses or has used to relieve pain or other symptoms; and 7) any other

12    factors concerning an individual's functional limitations and restrictions due to

13    pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

14    404.1529I.  The ALJ is instructed to "consider all of the evidence in an

15    individual's record," to "determine how symptoms limit ability to perform work-

16    related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

17        The ALJ found that Plaintiff's medically determinable impairments could

18    reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

19    statements concerning the intensity, persistence, and limiting effects of her

20    symptoms were not entirely consistent with the evidence.  Tr. 553.  The ALJ's

ORDER - 22

1  evaluation of Plaintiff's symptom claims and the resulting limitations relies

2  entirely on the ALJ's assessment of the medical evidence.  Having determined a

3  remand is necessary to readdress the medical evidence at step three, any

4  reevaluation must necessarily entail a reassessment of Plaintiff's subjective

5  symptom claims.  Thus, the Court need not reach this issue and on remand the ALJ

6  must also carefully reevaluate Plaintiff's symptom claims in the context of the

7  entire record.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because

8  we remand the case to the ALJ for the reasons stated, we decline to reach

9  [plaintiff's] alternative ground for remand.").

10  **D. Step Two**

11       Plaintiff contends the ALJ erred by finding Plaintiff's vision disorder non-

12  severe.  ECF No. 21 at 20-21.  At step two of the sequential process, the ALJ must

13  determine whether the claimant suffers from a "severe" impairment, i.e., one that

14  significantly limits his physical or mental ability to do basic work activities.  20

15  C.F.R. § 404.1520(c).  To establish a severe impairment, the claimant must first

16  demonstrate the existence of a physical or mental impairment by providing medical

17  evidence consisting of signs, symptoms, and laboratory findings; the claimant's

18  own statement of symptoms alone will not suffice.  20 C.F.R. § 404.1521.

19       An impairment may be found to be not severe when "medical evidence

20  establishes only a slight abnormality or a combination of slight abnormalities

ORDER - 23

which would have no more than a minimal effect on an individual's ability to work…." SSR 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1522(a); SSR 85-28.[8]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

---

[8] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 24

Here, the ALJ found that there was "little evidence that retinal edema or any other eye impairment caused any significant limitation in the Plaintiff's ability to perform basic work-related activities for a continuous 12 month period" and that Plaintiff's retinal edema was therefore non-severe; the ALJ did not "find evidence of any other medically determinable eye impairment." Tr. 550.  Under the regulations "seeing" is a basic work activity, and records show diagnosis and treatment for retinal edema through the date last insured, along with reports of blurry vision and eye problems which are not accounted for in the RFC.  *See* 20 C.F.R. § 404.1522(a); SSR 85-28; Tr. 289, 297, 301, 303, 307.  The ALJ also indicated that "any non-severe impairment is taken into account in assessing the [Plaintiff's] residual functional capacity." Tr. 549.  The ALJ's RFC, however, does not account for any vision impairment or any difficulty with vision.  *See* Tr. 552.  As the case is being remanded for the ALJ to reconsider the medical evidence at step three, the ALJ is also instructed to reconsider the step-two analysis.

**E.  Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 21 at 21.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

ORDER - 25

When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits.  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a

ORDER - 26

whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, the Court finds further proceedings are necessary to resolve conflicts in the record, as well as to further develop the record by taking testimony from a medical expert. As such, the case is remanded for further proceedings consistent with this Order.

On remand, the ALJ is to obtain the testimony of a medical expert, preferably an oncologist, and conduct a new sequential analysis. The ALJ shall also determine whether Plaintiff's 2017 Title XVI claim or any other claim remains pending and, as necessary, ensure that that any such claim is escalated to the hearing level for adjudication at the time of this Title II matter.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and not free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

ORDER - 27

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED February 25, 2022.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 28